**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TERRI MATOUSEK, as the Personal Representative of the Estate of John C. Matousek, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-19-151-PRW |
| (1) CITY OF WAUKOMIS, a municipal corporation; | ) ) ) ) | |
| (2) MARSHALL WOODSON, in his individual and official capacities; | ) ) ) | |
| (3) REID GAINES, in his individual and official capacities; | ) ) ) | |
| Defendants. | ) | |

## **ORDER**

Defendants move for dismissal of this action (Dkt. 10) for failure to state a claim upon which relief can be granted. The complaint alleges that the defendant officers violated John Matousek's substantive due process rights when their highspeed pursuit of a reckless driver tragically ended in Mr. Matousek's death. In Defendants' view, caselaw establishes that the alleged facts are insufficient to support such a claim, and in any event, the defendant police officers are entitled to qualified immunity. For the reasons outlined below, the motion is granted.

*Background*

John Matousek was driving on U.S. Highway 81 after attending a high school basketball game when he noticed the emergency lights and sirens of two police cars

1

approaching.¹ He pulled over to the shoulder of the highway and was soon tragically struck head-on and killed by the vehicle being pursued by police and driven by Beki Bajo.² His personal representative and widow, Terri Matousek, has sued asserting that the actions of Officers Marshall Woodson and Reid Gaines deprived her husband of substantive due process rights in violation of the Fourteenth Amendment.³

At 9:59 p.m., the officers were monitoring police radio reports of Bajo's erratic driving.⁴ Bajo reportedly tried to run another driver off the road three times and then began driving on the wrong side of the road on U.S. Highway 81.⁵ The officers attempted to pull over Bajo by activating their lights as he approached them driving "at a slow rate of speed and in a controlled manner" on the wrong side of the road.⁶ Bajo did not pull over.⁷ The officers made U-turns and began pursuing Bajo as he led them on a high speed pursuit reaching speeds of over 80 miles per hour.⁸ At 10:09 p.m., while being pursued by the officers, Bajo crashed his vehicle into Mr. Matousek's vehicle on the shoulder, killing him at the scene.⁹ Plaintiff not only brings claims under 42 U.S.C. § 1983 against the officers

---

¹ Compl. (Dkt. 1) at 11.

² *Id*.

³ *Id*. at 1–19.

⁴ *Id*. at 4.

⁵ *Id*. at 5–7. The Complaint does not say whether the latter fact—that Bajo was traveling on the wrong side of the rode—was communicated to the defendant officers over the radio.

⁶ *Id*. at 8.

⁷ *Id*. at 9.

⁸ *Id*. at 10.

⁹ *Id*. at 11.

for violations of Mr. Matousek's substantive due process rights,[10] but also against the City of Waukomis for lack of training or inadequate training of officers in highspeed pursuit situations.[11]

Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted because under whichever standard the officers' conduct is judged (deliberate indifference or intent to harm), the complaint does not allege facts that constitute a constitutional violation.[12] In the alternative, the officers assert qualified immunity.[13] Plaintiff disagrees and asserts that she has alleged facts that constitute a constitutional violation showing that the officers' actions were deliberately indifferent and it was clearly established at the time of the collision that the officers' conduct violates the Constitution.[14]

### *Failure to State a Claim*

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[15] While a complaint need not recite "detailed factual

---

[10] *Id*. at 12–15. Presumably Plaintiff asserts Mr. Matousek was deprived of his substantive due process right to life since he lost his life, but she does not explicitly say so in the complaint.

[11] *Id*. at 15–19.

[12] Defs.' Mot. to Dismiss & Br. in Supp. (Dkt. 10).

[13] *Id*.

[14] Pl.'s Resp. & Obj. to Defs.' Mot. to Dismiss Pl.'s Compl. (Dkt. 15).

[15] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996)).

allegations," "a plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[16] The pleaded facts must establish that the claim is plausible.[17]

Plaintiff claims that the officers' actions deprived Mr. Matousek of his substantive due process rights because their deliberate indifference in pursuing a driver with a known propensity to use his vehicle to attempt to injure third-parties created a great risk of injury to someone like Mr. Matousek.[18] Defendants argue that the deliberate indifference standard is not the standard to use in assessing the constitutionality of the officers' conduct.[19]

A substantive due process violation can occur via a legislative act that infringes on a fundamental right or "official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience."[20] Depending on the circumstances, conduct "shocks the judicial conscience" if the official was deliberately indifferent to a person's right to life or safety or possessed "an intent to either physically

---

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[17] *Id.*

[18] *See* Compl. (Dkt. 1) at 12–15; Pl.'s Resp. & Obj. to Defs.' Mot. to Dismiss Pl.'s Compl. (Dkt. 15) at 22.

[19] Defs.' Mot. to Dismiss & Br. in Supp. (Dkt. 10) at 14.

[20] *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019); *see Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006) (internal quotation omitted) ("The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.").

harm the suspect or worsen his legal plight."[21] The Supreme Court addressed high-speed police chases specifically in *City of Sacramento v. Lewis*[22]:

> A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.[23]

As a result, it held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."[24] The Court also noted, however, that the deliberate indifference standard "is sensibly employed only when actual deliberation is practical"[25] and "rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations."[26]

In Plaintiff's view, it was practical for the officers to deliberate about whether to pursue Bajo in the several minutes between initially monitoring Bajo's driving over the police radio and beginning the pursuit.[27] Specifically, Plaintiff alleges that at 9:59 p.m., the

---

[21] *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1103 (10th Cir. 2009).

[22] *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).

[23] *Id.* at 853.

[24] *Id.* at 854.

[25] *Id.* at 851; *see Green*, 574 F.3d at 1303; *Ellis*, 589 F.3d at 1102 ("When an officer is in a high-pressure situation where time is of the essence, there must be evidence of a purpose to cause harm unrelated to the legitimate object of the arrest to satisfy the element of arbitrary conduct shocking to the conscience for a due process violation.").

[26] *Lewis*, 523 U.S. at 853; *see Green*, 574 F.3d at 1303.

[27] Pl.'s Resp. & Obj. to Defs.' Mot. to Dismiss Pl.'s Compl. (Dkt. 15) at 21–22.

officers became aware of a road rage incident from the Enid emergency radio dispatcher.[28] They learned that a blue Mitsubishi was driving erratically and attempted to run a driver off the road three times.[29] At 10:05 p.m., the officers overheard on the radio an Enid officer inform dispatch to notify the Waukomis police to be on the lookout for the blue Mitsubishi heading in the direction of Waukomis.[30] "While monitoring radio traffic, [the officers] were able to deliberately and thoughtfully consider the potential danger of antagonizing and provoking Bajo into a high speed pursuit and creating a dangerous situation for themselves and others operating their motor vehicles on the road ways."[31] In addition, they "had significant time to deliberately and thoughtfully consider Bajo's propensity to intentionally injure a third-party motorist by his previous attempts to use his vehicle as a weapon."[32] Bajo was at times driving in the wrong lane of traffic, but he was doing so "at a slow rate of speed and in a relatively controlled manner" before the officers pursued him.[33] When the officers "made the deliberate and calculated decision to initiate a pursuit of Bajo—he immediately increased his speed and began driving recklessly."[34]

Boiled down, Plaintiff alleges that the time between the officers' awareness of Bajo's reckless driving and their decision to initiate a pursuit was enough time "to make

---

[28] Compl. (Dkt. 1) at 4.

[29] *Id*. at 4–5.

[30] *Id*. at 6.

[31] *Id*.

[32] *Id*.

[33] *Id*. at 9.

[34] *Id*. at 10.

unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations,"[35] so that the deliberate indifference standard applies and her complaint states a claim.

The Court disagrees. This case involves a high-speed chase as contemplated by *Lewis*. While the officers knew of Bajo's reckless driving for several minutes, the complaint reveals that the officers' pursuit of him did not escalate until Bajo increased his speed.[36] At this point, a high-speed chase ensued, and the relevant moments of contemplation are from the time when Bajo escalated his speed to when the officers decided to continue their pursuit. Bajo's sudden and speedy flight from the officers constitutes an evolving, fluid, and dangerous situation[] which preclude[s] the luxury of calm and reflective deliberation."[37] In this virtually instantaneous moment, the officers had to "balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders."[38] Accordingly, the Court will assess the officers' conduct under *Lewis's* "intent to harm" standard.

Under that standard, unless the officers intended to harm Bajo physically or to worsen his legal plight by engaging in the high-speed pursuit, their conduct did not violate

---

[35] *Lewis*, 523 U.S. at 853; *see Green*, 574 F.3d at 1303.

[36] Compl. (Dkt. 1) at 9–10.

[37] *Green*, 574 F.3d at 1306 (internal citation omitted).

[38] *Lewis*, 523 U.S. at 853.

Mr. Matousek's constitutional rights.[39] The complaint does not allege any such intent nor any facts from which such an intent could be inferred, so it does not allege a constitutional violation and therefore fails to state a claim upon which relief can be granted against the officers in their individual capacities and the City of Waukomis.[40][41]

Even if the deliberate indifference standard applied, the complaint stills falls short of stating a claim. Under that standard, not only must "actual deliberation [be] practical,"[42] but the officers' conduct must show "deliberate indifference to an extremely great risk of serious injury to someone in [Mr. Matousek's] position."[43] "Extreme" means "egregious or outrageous to the extent that it shocks the judicial conscience."[44]

Plaintiff asserts that the officers "were afforded several minutes to think through how an encounter with Bajo would play out, and they were given time to consider this, privy to knowledge of Bajo's past attempts at injuring third-party motorists with his

---

[39] *Id*. at 854.

[40] *Graves*, 450 F.3d at 1218 ("[A] municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

[41] Plaintiff concedes that her claims against the officers in their official capacities should be dismissed, *see* Pl.'s Resp. & Obj. to Defs.' Mot. to Dismiss Pl.'s Compl. (Dkt. 15) at 6 n. 1, so they are dismissed without prejudice.

[42] *Id*. at 851; *see Green*, 574 F.3d at 1303; *Ellis*, 589 F.3d at 1102 ("When an officer is in a high-pressure situation where time is of the essence, there must be evidence of a purpose to cause harm unrelated to the legitimate object of the arrest to satisfy the element of arbitrary conduct shocking to the conscience for a due process violation.").

[43] *Green*, 574 F.3d at 1303 (internal quotation omitted).

[44] *Id*.

vehicle."[45] Plaintiff argues that the officers "provoked and pushed a man, with known propensities of attempting to injury third-party motorists, to his breaking point."[46] But while the complaint alleges that the officers had knowledge that Bajo had been involved in a road rage incident, there are no facts alleged indicating that the officers should have anticipated Bajo would run when they attempted to stop him.[47] While he was on the wrong side of the road, he was driving slowly and under control, and there are no allegations that he had been involved in any aggressive conduct other than the initial road rage incident.[48] While Plaintiff may well be correct that the officers had a few minutes to think about how an attempted interdiction with Bajo might play out, there are no facts alleged to suggest that in those moments—when all they knew was that Bajo had been involved in a road rage incident and possibly that he had been driving on the wrong side of the road[49]—that they should have anticipated Bajo would lead them in a high speed chase nor any facts to support Plaintiff's contention the officers should have planned to let Bajo go rather than pursue him in the event he ran.

---

[45] Pl.'s Resp. & Obj. to Defs.' Mot. to Dismiss Pl.'s Compl. (Dkt. 15) at 18; *see* Compl. (Dkt. 1) at 9.

[46] Pl.'s Resp. & Obj. to Defs.' Mot. to Dismiss Pl.'s Compl. (Dkt. 15) at 21.

[47] *See* Compl. (Dkt. 1) at 5–6.

[48] *Id*. at 8.

[49] It is unclear from the complaint whether the officers were made aware that Bajo was driving on the wrong side of the road prior to them observing it for themselves in the seconds preceding their attempt to stop Bajo, so it is unclear whether this is a factor that the officers had considerable time to contemplate.

On these facts, the officers' decision to attempt to stop Bajo does not demonstrate "deliberate indifference to an extremely great risk of serious injury to someone in [Mr. Matousek's] position."[50] From the officers' perspective, they were making a traffic stop on a vehicle that had been engaged in a road rage incident. When they made a U-turn to pursue Bajo, he sped up and instantaneously transformed the attempted stop into a high-speed chase. The officers' split second decision to pursue Bajo rather than letting him go is not "egregious or outrageous" so as to "shock[] the judicial conscience."[51][52][53]

Moreover, in those minutes when the officers had the chance to contemplate stopping Bajo if they encountered him, the officers had to balance multiple concerns. While the risk that Bajo might flee and create a risk to other motorist was one, there was also the risk that he would continue to pose a risk to other motorists if they did nothing. Remember, what the officers knew was that Bajo had tried to harm another motorist entirely without police involvement or provocation. Worse yet, when they caught sight of him, he was driving on the wrong side of the road, creating a clear and immediate danger to other

---

[50] *Green*, 574 F.3d at 1303 (internal quotation omitted).

[51] *Id*.

[52] Indeed, if it were, then officers would be unable to pursue any fleeing motorist who was observed driving recklessly. This would include intoxicated drivers, who undoubtedly pose a risk to third-party motorists by being on the road at all, but this risk may be escalated by increased speeds during a high-speed chase. Such pursuits generally do not shock the conscience and violate an injured third-party's substantive due process rights.

[53] Plaintiff also asserts that Officer Woodson violated police policy because his wife was in his patrol vehicle while engaged in the pursuit. *See* Compl. (Dkt. 1) at 12. She does not allege that this affected Officer Woodson's conduct, however, so it is irrelevant to the substantive due process analysis.

motorists unless he was quickly stopped. The officers' decision to attempt to stop Bajo and quickly end the threat to others was not "deliberately indifferent" to the rights of other members of the public. Rather, it was a decision reasonably calculated to protect the well-being of other members of the public. Had these officers chosen to let Bajo go and he subsequently engaged in another unprovoked attempt to harm a member of the public, but this time successfully, one can imagine that these officers might be facing a similar suit based on their failure to act. This sort of damned if you do, damned if you don't conundrum is why a police officer's decision to pursue in a case like this is not actionable under either the deliberate indifference or intent to harm standard.

Mr. Matousek's untimely death is a tragedy. But the blame here falls on the person who killed him: Bajo, and not on the police officers who were trying to prevent just such a thing from happening.

## *Conclusion*

Since the facts alleged in the complaint do not support a claim that the defendant officers violated Mr. Matousek's Fourteenth Amendment rights, the complaint fails to state a claim upon which relief can be granted. The motion to dismiss is **GRANTED** and the complaint is **DISMISSED**.

**IT IS SO ORDERED this 4th day of May 2020.**

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE